IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| HIGH LINE CANAL COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>OHIO SECURITY INSURANCE COMPANY and JOHN DOES 1-5,<br><br>Defendants. | CV-22-54-BU-BMM<br><br>ORDER |

## INTRODUCTION

Plaintiff High Line Canal Co. ("High Line") has brought a declaratory judgment action and demand for jury trial against Defendants Ohio Security Insurance Co. and John Does ("OSIC"). (Doc. 7.) OSIC and High Line filed cross-motions for summary judgment. (Doc. 13; Doc. 19.) The Court conducted a hearing on the summary judgment motions on November 10, 2022. (Doc. 32.)

## FACTUAL AND LEGAL BACKGROUND

High Line owns and operates the High Line Canal (the "Canal"). The Canal flows for approximately 30 miles in Gallatin County, Montana. (Doc. 20 at 6.) The Canal conveys irrigation water to farms throughout the county. (*Id.*) High Line's

1

action stems from the Canal's "catastrophic breach" on June 17, 2021. (*Id.*) The breach caused a flood that washed out a public road and spread debris over the neighboring land. (*Id.* at 6–7.)

The June 2021 breach occurred at an unlined portion of the Canal. (*Id.* at 7.) This section of the Canal consisted of sand, gravel, and loam soil formed into a ditch. (*Id.*) The section lies "just beyond" a lined portion of the Canal that breached approximately twenty years ago. (*Id.*) High Line repaired the earlier breach by adding a lining to the breached section. (*Id.*) This lining did not extend to the section that later would breach in June 2021. (*Id.*)

Water had been seeping from the unlined portion of the Canal for at least a year before the June 2021 breach. (*Id.*) An employee reported the seepage at High Line's annual meeting in February 2021. (*Id.*) High Line neglected to repair the Canal or take any other action to mitigate the seepage and attendant flooding risk. (*Id.*) High Line alleges that the breach would not have occurred had it lined the Canal past the seepage point. (*Id.*)

OSIC issued insurance policy number BLS (22) 56 41 12 68 (the "Policy") to High Line. (Doc. 15 at 1–2.) The Policy provided coverage for the time period from January 2, 2021, through January 2, 2022. (*Id.*) The Policy contains the following "voluntary payments" provision: "No insured will, except at that

2

insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [OSIC's] consent." (Doc. 8-1 at 51.) The Policy additionally requires cooperation with claims investigations. An insured must "cooperate with [OSIC] in the investigation or settlement of the claim or defense against the 'suit.'" (*Id.* at 48.) The Policy also conditions an insured's right of action on compliance: "No person or organization has the right . . . to sue [OSIC under the Policy] unless all of its terms have been fully complied with." (*Id.*)

Neighboring landowners submitted claims to OSIC under the Policy for property damage caused by the Canal's June 2021 breach. (Doc. 20 at 7.) OSIC denied the claims in September 2021. (*Id.*) OSIC stated that it was "unable to conclude" that High Line was "responsible" for the damage "based on the facts of this claim and the information provided to it." (Doc. 7 at 3.) OSIC did not respond to further correspondence from High Line's counsel. (Doc. 20 at 8.) High Line paid $103,253.32 to neighboring landowners for repairs. High Line asserts that these repairs to the neighboring lands proved necessary to restore the washed-out public road and to allow it to access the breached section of the Canal. (*Id.* at 8–9.)

High Line filed this action in the Eighteenth Judicial District Court, Gallatin County, on July 7, 2022. (Doc. 1-1.) OSIC removed the action to federal court on

July 29, 2022. (Doc. 1.) High Line seeks a declaratory judgment holding OSIC responsible for the damages payments High Line already made to its neighboring landowners and for "reasonably clear" future damages arising from the flooding. (*Id.* at 4.) High Line also requests interest, attorney's fees, and costs. (*Id.* at 4–5.) OSIC filed a motion for summary judgment on the basis that it possesses no obligation to reimburse High Line for its voluntary payments. (Doc. 13 at 2.) High Line filed a cross-motion for summary judgment. (Doc. 19.) The Court ordered the parties to submit supplemental briefing on the issue of negligence at the conclusion of the motion hearing on November 10, 2022. (Doc. 32.) High Line and OSIC timely filed their respective supplemental briefs. (Doc. 33; Doc. 34.)

## LEGAL STANDARD

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine material fact dispute requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*. at 248. All reasonable inferences must be viewed in the light most favorable to the non-moving party. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014).

# DISCUSSION

I. **Whether High Line Was Liable for the Canal's Breach as a Matter of Law.**

The Court examines High Line's potential liability under both strict liability and negligence theories.

### A. Applicable Legal Standard for Canal or Ditch Owners in Montana.

High Line urges the Court to apply a strict liability analysis. (Doc. 33 at 3–4.) High Line relies on *Covey v. Brishka* to argue that operating the Canal qualifies as an "abnormally dangerous activity" that warrants application of strict liability. 445 P.3d 785 (Mont. 2019). *Covey* concerned liability for flooding caused by the breach of a 4.5-million-gallon artificial pond constructed above a residential area at a ski resort. *Id.* at 789. The Montana Supreme Court concluded that the pond's operation qualified as an "abnormally dangerous" activity. *Id.* at 793. *Covey* held the pond's owner strictly liable for property damage caused by the pond's flooding. *Id.* at 794. OSIC counters that strict liability remains unavailable under Montana law for damages that result from the breach or flooding of a canal. (Doc. 34 at 2.) OSIC argues that a negligence standard applies to High Line. (*Id.* at 3–4.)

The Court agrees with OSIC that negligence supplies the appropriate liability standard under Montana law. Nine states impose strict liability on canal

5

and ditch owners in the absence of an unforeseeable natural disaster. *See* J.B. Glen, Annotation, *Liability for Overflow or Escape of Water from Reservoir, Ditch, or Artificial Pond*, 169 A.L.R. Fed. 517 (originally published in 1947). Montana does not. *Id.*

Courts in Montana will impute negligence as a matter of law in some circumstances that involve damages caused by the operation of a canal or irrigation ditch. Montana law still requires negligence, however, for liability to attach. "[T]he owner of an irrigating ditch is not an insurer thereof and is liable only for damages caused by his willful acts or by his negligence in constructing, maintaining or using his ditch." *Calvert v. Anderson*, 236 P. 847, 849 (Mont. 1925).

*Calvert* addressed liability for the negligent operation and maintenance of a ditch constructed with unimproved soil. *Id.* at 848. Seepage from the ditch triggered a landslide that damaged the plaintiffs' crops. *Id.* The Montana Supreme Court concluded that the ditch owners had been negligent as a matter of law because they had constructed the ditch with "loose dirt, sand, gravel, and other porous formations, without employing any means to prevent the water escaping." *Id.* at 848–49. *Calvert* affirmed that "[t]he authorities [were] quite uniform" in finding negligence as a matter of law in circumstances where an owner fails to

"exert reasonable efforts to prevent seepage" from a ditch made of materials "naturally incapable of holding water." *Id.* at 849 (internal citations omitted).

*Rauser v. Toston Irrigation District* confirms that courts properly may establish negligence as a matter of law where "damages were proximately caused by the undertaking of the project and a reasonable foreseeable consequence of the undertaking." 565 P.2d 632, 637 (Mont. 1977). The Montana Supreme Court determined that defendant irrigation company had acted with negligence when it knew or should have known that damage to the neighboring land would be "inevitable" absent remedial work. *Id.* The Court determines that negligence, rather than strict liability, supplies the appropriate legal standard for High Line's potential liability.

### B. Whether High Line Was Negligent as a Matter of Law.

The Canal was constructed in 1889. (Doc. 21 at 2.) The undisputed facts demonstrate that High Line exclusively owned and operated the Canal. (Doc. 15 at 3; Doc. 21 at 2.) The section of the Canal relevant to the June 2021 breach consisted of "unimproved sand, gravel[,] and loam soil formed into a ditch." (Doc. 21 at 2.) High Line knew about the seepage at the June 2021 breach site. (*Id.* at 2–3.)

7

An unlined section of the Canal near the June 2021 breach site had breached about 20 years earlier. (*Id.* at 2.) High Line responded to the earlier breach by lining the area of the Canal around the initial breach site. (*Id.*) The Canal remained unlined at the site of the June 2021 breach. (*Id.*)

The Court finds that High Line possessed exclusive control of the Canal. (Doc. 15 at 3; Doc. 21 at 2.) The Court additionally finds that High Line was on notice of the risk posed by the unlined section of the Canal based on the earlier breach to an adjacent portion of the Canal. High Line's subsequent decision to line part of the Canal, but not the site of the 2021 breach, and its knowledge of the long-term seepage at or near the site of the June 2021 breach further support a potential negligence claim. (*Id.* at 2–3.) The circumstances surrounding the Canal's construction, operation, and 2021 breach likely may align with the requirements for establishing negligence under Montana law. *Calvert*, 236 P. at 849; *Rauser*, 565 P.2d at 637.

A number of material facts remain in dispute, however, that preclude a finding of negligence as a matter of law. These questions of fact include the following matters: (1) whether the specific mixture of sand, gravel, and loam soil at the breached section of the Canal qualifies as being "naturally incapable of holding water," *Calvert*, 236 P. at 849; (2) what "reasonable mitigation" of the

8

seepage on High Line's part would have entailed; and (3) whether harm was inevitable absent remedial actions from High Line. *Rauser*, 565 P.2d at 637; 565 P.2d 632. The Court will deny the parties' cross-motions for summary judgment. *Anderson*, 477 U.S. at 248. The finder of fact will have a chance to resolve these disputes during a trial on the merits.

## II. Whether OSIC Owes an Obligation Under the Policy to Reimburse Payments High Line Made to its Neighbors.

OSIC and High Line level other arguments in support of their respective summary judgment motions. Both parties contend that the other has committed a material breach of the Policy. (Doc. 14 at 4–5; Doc. 20 at 11–14, 25–26.) OSIC asserts that it owes no obligation under the Policy to reimburse High Line for its voluntary payments to neighboring landowners. (Doc. 14 at 7–13.) OSIC argues that High Line has violated the clear terms of the Policy by failing to cooperate with OSIC's investigation, settlement, and defense of the claim and by making unilateral voluntary payments to which OSIC did not consent. (*Id.* at 5–6, 9.)

High Line responds with the following counter-arguments: (1) that High Line cooperated with OSIC's claims investigation; (2) that the Policy's "voluntary payments" and "cooperation" clauses prove void on public policy grounds; (3) that the Policy runs afoul of the Insurance Simplification Act; (4) that the Policy's

9

"voluntary payments" clause violates High Line's reasonable expectations of coverage as the insured; and (5) that OSIC suffered no prejudice from any violation of the Policy by High Line. (Doc. 20 at 15–23, 26–27.)

The Court declines to rule on these arguments due to its decision to deny the parties' cross-motions for summary judgment. The Court and the finder of fact will resolve these disputes following a trial on the merits.

## ORDER

Accordingly, **IT IS ORDERED:**

1. Defendant OSIC's Motion for Summary Judgment (Doc. 13) is **DENIED.**

2. Plaintiff High Line's Cross-Motion for Partial Summary Judgment (Doc. 19) is **DENIED.**

DATED this 12th day of December, 2022.

_____
Brian Morris, Chief District Judge
United States District Court